UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00152-HBB

KARLE B. MOULDEN, IV                                                                    PLAINTIFF

VS.

KILOLO KIJAKAZI, ACTING COMMISSIONER
SOCIAL SECURITY ADMINISTRATION[1]                                    DEFENDANT

MEMORANDUM OPINION
AND ORDER

BACKGROUND

Before the Court is the complaint (DN 1) of Karle B. Moulden, IV ("Plaintiff") seeking

judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both

the Plaintiff (DN 17) and Defendant (DN 23) have filed a Fact and Law Summary. For the reasons

that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED**

for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 15). By Order entered March

31, 2021 (DN 16), the parties were notified that oral arguments would not be held unless a written

request therefor was filed and granted. No such request was filed.

---

1 Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

On January 25, 2018, Plaintiff protectively filed an application for Supplemental Security Income (Tr. 15, 183-88).   Plaintiff alleged that he became disabled on May 9, 2015, as a result of psychological problems, mood disorder, bipolar disorder, injuries from motorcycle wreck, and broken pelvis (Tr. 15, 71-72, 89).   The claim was denied initially on April 24, 2018, and upon reconsideration on July 16, 2018 (Tr. 15, 87, 105, 106-09, 115-17).[2]   Plaintiff the filed a written request for a hearing on August 27, 2018 (Tr. 15, 122-24).

On June 3, 2019, Administrative Law Judge Susan Brock ("ALJ") conducted a video hearing from Louisville, Kentucky (Tr. 15, 35-37).   Plaintiff and his counsel, Charles Dale Burchett, participated from Bowling Green, Kentucky (Id.).   Elizabeth Schultz, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated August 7, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-29).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 25, 2018, the application date (Tr. 17).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: bipolar disorder; personality disorder; attention deficit hyperactivity disorder (ADHD); alcohol, cocaine, and opioid abuse; diabetes mellitus with neuropathy; and residuals from fractures sustained in motor vehicle accident (Id.).   The ALJ also determined that Plaintiff has the following "non-severe" impairments: history of tardive dyskinesia; hypertension; hyperlipidemia; and hypogonadism (Tr. 17-18).   At the third step, the

---

2 Although the administrative decision indicates Plaintiff's application was denied initially on April 28, 2018 (Tr. 15), the Disability Determination and Transmittal form indicates April 23, 2018 (Tr. 87).   However, the notice sent to Plaintiff is dated April 24, 2018 (Tr. 106-09).

ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following postural, environmental, and mental limitations: he is limited to frequent climbing of ladders, ropes, scaffolding; he is limited to frequent stooping, kneeling, crouching, and crawling; he is limited to frequent exposure to vibration, unprotected heights, and hazardous machinery; he can perform simple routine tasks; he can sustain concentration, effort, and pace for simple tasks requiring little independent judgment; he can frequently interact with co-workers and supervisors but only occasionally interact with the general public; and he can adapt to situational change and recognize hazards in the workplace given reasonable support (Tr. 20).   The ALJ relied on testimony from the vocational expert to find that Plaintiff is unable to perform any past relevant work (Tr. 28).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 28-29).   The ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 25, 2018, the date of the application, through August 7, 2019, the date of the decision (Tr. 29).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 180-82).   The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   <u>Cohen v. Sec'y of Health & Human Servs.</u>, 964 F.2d 524, 528 (6th Cir. 1992) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d 146, 148 (6th Cir. 1996).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Supplemental Security Income to persons with disabilities.   42 U.S.C. § 1381 et seq.   The term "disability" is defined as an

4

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. § 416.905(a); <u>Barnhart v. Walton</u>, 535 U.S. 212, 214 (2002); <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 416.920.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the RFC to return to his or her past relevant work?

5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

<u>Challenge to Severe Impairment Determination</u>

1. Arguments of the Parties

Plaintiff argues the ALJ erred at step two because she failed to consider whether his neuropathic pain in the right thigh, calf, and foot—caused by an S1 nerve root injury—is a severe

impairment (DN 17 PageID # 1527-29).[3]   Plaintiff acknowledges that the ALJ found residuals from Plaintiff's fractures were severe impairments, but maintains "it is not clear that the effect of his later neurological abnormalities were considered" (Id. at PageID # 1528).   Plaintiff maintains the oversight cannot be considered harmless error because his testimony regarding this neurological conditions indicates "his legs 'don't work like they used to' . . . and that he has a 'lightning bolt' sensation shooting from his tailbone after a few minutes of sitting or standing" (Id.) (quoting Tr. 41, 47).   Additionally, Plaintiff asserts the ALJ's determination that he has the physical RFC to perform medium work—which contemplates the ability to stand and walk for a total of six hours per eight-hour workday and lift up to fifty pounds and frequently lifting up to 25 pounds—does not address the limitations associated with his EMG documented neurological condition (Id. at PageID # 1529).

Defendant maintains the ALJ acknowledged the injuries Plaintiff sustained in the motorcycle accident and referenced them collectively as a severe impairment (DN 23 PageID # 1553) (citing Tr. 17).   "Additionally, later in the sequential evaluation, the ALJ expressly considered the injuries and impairments stemming from that accident, including evidence of a right S1 body fracture and nerve root injury" (Id. at PageID # 1553-54) (citing Tr. 24).   Defendant argues the ALJ's failure to deem the impairment "severe" would be harmless error because other impairments were found to be severe and, through the remaining steps in the sequential evaluation, the ALJ considered Plaintiff's right S1 body fracture and nerve root injury (Id. at PageID # 1554)

---

3 Plaintiff points out he was diagnosed with neuropathic foot pain by an orthopedist (Tr. 1371, 1372, 1374); a follow up evaluation with a neurologist showed a diagnosis of S1 to S2 nerve root injury (Tr. 1365-1366); an EMG confirmed active denervation of the right calf muscle suggestive of right S1 nerve root injury with possible causes being listed as a stretch injury or laceration of the S1 nerve root in the pelvis (Tr. 1365); and physical examination findings upon neurological examination showed decreased sensation in the right leg and foot (Tr. 1371), weakness in right leg eversion, hamstring and calf weakness, and absent ankle jerks (Tr. 1368).

(citing <u>Maziarz v. Sec'y of Health & Human Servs.</u>, 837 F.2d 240, 244 (6th Cir. 1987) (other citations omitted)).

    2.  Applicable Law

At the second step in the sequential evaluation process, a claimant must demonstrate he suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ." 20 C.F.R. § 416.920(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).   So long as an Administrative Law Judge finds at least one impairment is severe, continues with the sequential evaluation process, and considers the claimant's severe and nonsevere impairments in the remaining steps, the error is harmless.   <u>Maziarz v. Sec'y of Health & Human Servs.</u>, 837 F.2d 240, 244 (6th Cir. 1987); <u>Mish v. Comm'r of Soc. Sec.</u>, No. 1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011).

    3.  Discussion

At step two, the ALJ found Plaintiff had several "severe" impairments including "residuals from fractures sustained in motor vehicle accident" (Tr. 17).   Thus, the undersigned must determine whether the ALJ considered Plaintiff's nerve root injury in the remaining steps in the sequential evaluation process.

At step three, the ALJ considered whether Plaintiff met or medically equaled Listing 1.06, Fracture of the Femur, Tibia, Pelvis, or one or more of the Tarsal Bones (Tr. 18).   The ALJ commented, "As will be discussed in greater detail below, the claimant has not shown the requisite complications or inability to ambulate effectively" (<u>Id.</u>).

At step four, in the context of explaining the RFC determination, the ALJ acknowledged Plaintiff's testimony about pain in his tailbone, nerve damage in his right leg, and the nerve damage not heal correctly despite removal of the screws in his pelvis (Tr. 20-21). Further, the ALJ provided a comprehensive discussion of the medical evidence pertaining to Plaintiff's residuals from fractures sustained in the May 2015 motorcycle accident (Tr. 24-25). The ALJ noted that Plaintiff's injuries included a right S1 vertebral body fracture, a disrupted symphysis pubis, and that Plaintiff underwent an open reduction and internal fixation for the pubic symphysis (Tr. 24) (citing Tr. 768-851, 853-921).

The ALJ discussed the results of the July 2015 MRI of Plaintiff's pelvis and an EMG that "showed findings most suggestive of right S1 nerve root injury secondary to stretch injury or toxic effects of blood in the pelvis or possible laceration of the S1 root in the pelvis" (Id.) (citing Tr. 598-741, 1364-69). The ALJ accurately summarized the medical evidence concerning treatment Plaintiff received for the right S1 nerve root injury, including surgery for removal of the transsacral SI screws and the subsequent physical examinations in 2017 and 2018 that revealed full strength in his bilateral lower extremities, steady gait without ataxia, the ability to sit and stand without difficulty, and good results on the prescribed medication Neurontin (Tr. 24-25) (citing Tr. 263-318, 326-31, 332-458, 547-96, 598-741, 853-921, 1018-1106, 1201-96, 1370-82). Additionally, the state agency medical consultants opined that Plaintiff was capable of performing a full range of work at the medium exertional level (Tr. 80-82, 97-99). The ALJ did not find their opinions entirely persuasive because the evidence as a whole showed some evidence of ongoing pain which would support some additional postural and environmental limitations not considered by the state agency medical consultants (Tr. 25).

The ALJ's RFC determination (Tr. 20) and hypothetical question to the vocational expert (Tr. 66-67) included the additional postural and environmental limitations intended to address Plaintiff's nerve root injury.   Further, the ALJ relied on the vocational expert's testimony (Tr. 67) in making vocational findings at the fourth and fifth steps in the sequential evaluation process (Tr. 28-29).

In sum, the purported failure to deem the nerve root injury a severe impairment was harmless error because the ALJ found that several other impairments were severe, the ALJ continued with the sequential evaluation process, and the ALJ considered all of Plaintiff's impairments—including the nerve root injury—in the remaining steps in the sequential evaluation process.   *See* Maziarz, 837 F.2d at 244.   Therefore, Plaintiff is not entitled to relief on this claim.

<u>Challenge to RFC Determination</u>

1.   Arguments of the Parties

Plaintiff asserts the RFC determination is not supported by substantial evidence because the ALJ failed to follow applicable law when she evaluated the persuasiveness of Dr. Dervishi's consultative medical opinion (DN 17 PageID #1529-31) (citing 20 C.F.R. § 416.920c; Cole v. Astrue, 661 F.3d 931, 939-40 (6th Cir. 2011).   Plaintiff points out the ALJ discredited Dr. Dervishi's opinion on the basis of a "typographical error in the report making it unclear whether the doctor was reporting that the use of the cane was medically necessary or unnecessary" (Id. at PageID # 1530) (citing Tr. 25).   Further, Plaintiff asserts that the ALJ's analysis failed to consider Dr. Dervishi's opinions regarding Plaintiff's difficulty bending and lifting (Id.) (citing Tr. 25).

9

Defendant contends while the ALJ's explanation for finding Dr. Dervishi's opinion unpersuasive may have been brief, it is supported by substantial evidence in the record and comports with applicable law (DN 23 PageID # 1554-60) (citing 20 C.F.R. § 416.920c(b)(2); Snead v. Comm'r of Soc. Sec., No. 2:19-CV-4831, 2021 WL 282555, at *14 (S.D. Ohio Jan. 28, 2021) (affirming administrative law judge's decision to reject opinion due to vagueness); see also Suggs v. Saul, No. 3:19-CV-00738-RE, 2020 WL 5880966, at *3 (W.D. Ky. Oct. 2, 2020) (administrative law judge did not err in offering brief discussion rejecting vague and conclusory opinion)).   Further, the ALJ could reasonably find Dr. Dervishi's findings on examination did not support a medical need for a cane (Id. at PageID # 1558) (citing Tr. 327-28).   Further, the ALJ had the discretion not to recontact Dr. Dervishi and instead rely on the evidence in the record (Id. at PageID # 1559).

2.  Applicable Law

The new regulations for evaluating medical opinions are applicable to Plaintiff's case because he filed his application after March 27, 2017 (Tr. 15).   The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[4] in the record, even if it comes from a treating medical source.   20 C.F.R. § 416.920c(a).[5]   Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative

---

[4] At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. §416.913a(a)(1).   Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. § 416.913a(b)(1).

[5] The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 416.927(c)(2).

medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. § 416.920c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20 C.F.R. § 416.920c(c)(1)-(5).[6] Of these five factors, the two most important are supportability and consistency.   20 C.F.R. § 416.920c(a) and (b)(2).   Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. § 416.920c(b)(2).   Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. § 416.920c(b)(2).

3.  Discussion

On April 14, 2018, Dr. Dervishi performed a consultative physical examination of Plaintiff and issued a report (Tr. 326-30).   The report notes that Plaintiff 's complained about "difficulty bending and picking things up, and back pain.   Exacerbated with turning, lifting 'gallon of milk'. Takes Neurontin for the pain" (Tr. 326).   Dr. Dervishi commented that Plaintiff's general appearance and posture were unremarkable, and that "observations during the [physical] exam were not remarkable" (Tr. 327).   Dr. Dervishi also indicated, "No assistive ambulation device was present.   The gait was normal, and the patient was able to get on/of the exam table without assistance" (Id.).   The musculoskeletal portion of the exam revealed "5/5 bilateral upper and lower extremity strength" (Id.).   The range of motion portion of the exam showed, "Mild limitation with

---

6 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. § 416.920c(c)(3)(i)-(v).

hip flexion, and lateral flexion of back both left and right, and knee flexion bilaterally, all others [within normal limits]" (Id.).

Dr. Dervishi's diagnosis and summary states, "Back pain: due to h/o MVA, able to walk 90% time without assistance.   He does use a cane, that was not prescribed for balance at times" (Id.).   Dr. Dervishi's medical source statement reads, "It is the examiners opinion that the results of this exam to be congruent with the subjective limits presentation of the patient, and that the use of the cane is **_medical u necessary_** with limits as presented by the patient" (Id.) (emphasis added, typographical error in original).   The ALJ remarked, "It is unclear whether this provider states the claimant's use of a cane was medically necessary or unnecessary, due to how it is phrased in the report and unclear whether there is a typo with regard to this specific word" (Tr. 25) (citing Tr. 327).   Additionally, the ALJ indicated the above conclusions were "neither helpful [nor] persuasive" because they are "vague at best, and do not offer clarity with regard to any specific functional limitations the claimant might have due to his conditions" (Id.).

Plaintiff claims the ALJ's evaluation does not provide the review required by 20 C.F.R. § 416.920c because it states "only that the doctor's opinion[s] were not 'helpful' and were not 'persuasive' for reasons that were not articulated in the denial decision" (DN 17 PageID # 1530). To the extent Plaintiff maintains the ALJ failed to provide reasons for not finding the opinions persuasive, the Court disagrees.   The ALJ provided two specific reasons why she found Dr. Dervishi's opinions unpersuasive.   First, because Dr. Dervishi's statement was so poorly phrased and apparently included a typographical error, the ALJ could not ascertaining whether Dr. Dervishi had indicated that Plaintiff's use of a cane was medically necessary or unnecessary.   Next, as Dr. Dervishi's statement did not express specific functional limitations (*e.g.*, lifting/carrying, standing

12

and/or walking, and sitting) that Plaintiff might have due to his physical conditions, the ALJ found the doctor's conclusions vague at best.

Certainly, as Defendant points out, there are cases within the district upholding an administrative law judge's assignment of little or no weight to vague and conclusory opinions regarding a claimant's limitations. *See e.g.* Suggs v. Saul, No. 3:19-CV-00738-RE, 2020 WL 5880966, at *3 (W.D. Ky. Oct. 2, 2020) (opinion offered only vague and conclusory statements regarding the plaintiff's condition); Reddick v. Colvin, No. 4:13-CV-00137-HBB, 2014 WL 3941991, at *7 (W.D. Ky. Aug. 12, 2014) (noting that neither letter clearly indicated the extent of the plaintiff's ability to perform work-related activities such as lifting/carrying, standing and/or walking, and sitting).   But those cases applied the rule in 20 C.F.R. §§ 404.1527(c) and 416.927(c).   Suggs, 2020 WL 5880966, at *3; Reddick, 2014 WL 3941991, at *7.

Here the Court is applying 20 C.F.R. § 416.920c and, despite an obligation to do so, the ALJ has not explained how the two most important factors—supportability and consistency—were considered in assessing the persuasiveness of Dr. Dervishi's opinions.   20 C.F.R. § 416.920c(b)(2); *see* Clark v. Comm'r of Soc. Sec., No. 2:20-CV-3338, 2021 WL 1903912, at *5 (S.D. Ohio May 12, 2021) (Recognizing supportability and consistency are the most important factors and administrative law judges must explain how they were considered.); Butcher v. Comm'r of Soc. Sec., No. 2021 WL 1878120, at *17 (N.D. Ohio May 3, 2021) (same).   Instead, the ALJ's explanation indicates how she considered "other factors" in determining the persuasiveness of Dr. Dervishi's opinions.   *See* 20 C.F.R. § 416.920c(b)(2) and (c)(5); *see* Clark, 2021 WL 1903912, at *5 (while administrative law judges may discuss how they evaluated the

three other factors, they are not generally required to do so.).   Thus, the ALJ failed to apply the agency rules properly.

Generally, an administrative law judge's "failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the [administrative law judge] may be justified based on the record.'"   Cole v. Astrue, 661 F.3d 931, 939-40 (6th Cir. 2011) (quoting Blakely v. Comm'r of Soc. Sec., 581 F.3d 339, 407 (6th Cir. 2009)).   However, in some instances, the failure to apply the rules properly can be harmless error.   Cole, 661 F.3d at 939-40; Blakely, 581 F.3d at 407.

The Sixth Circuit has yet to articulate a harmless error test tailored to the circumstances currently before the Court.   However, other district courts encountering procedural omissions under 20 C.F.R. §§ 404.1520c(b) or 416.920c(b) have looked to Sixth Circuit case law recognizing three situations where the failure to comply with the "good reasons" rule in 20 C.F.R. §§ 404.1527(c) and 416.927(c) was harmless.   See e.g. Hardy v. Comm'r of Soc. Sec., No. 20-10918, 2021 WL 3792170, at *6-7 (E.D. Mich. Aug. 13, 2021); Vaughn v. Comm'r of Soc. Sec., No. 20-cv-1119-TMP, 2021 WL 3056108, at *11-12 (W.D. Tenn. July 20, 2021).   Specifically, the Sixth Circuit indicated a violation of the "good reasons" rule can be deemed "harmless error" if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation.

14

Cole, 661 F.3d at 940 (referring to the "good reasons" rule now set forth in 20 C.F.R. § 404.1527(c)(2)).   The Court deems the above test appropriate for assessing whether the ALJ's omission should be deemed harmless error.

As for the first requirement, Dr. Dervishi's opinion is unabashedly based on Plaintiff's subjective statements which do not appear to be consistent with the doctor's own examination findings (Tr. 327-28).[7]   Further, Dr. Dervishi does not express specific functional limitations (*e.g.*, lifting/carrying, standing and/or walking, and sitting).   Instead, he provided a poorly phrased statement with a typographical error that leaves the reader wondering whether a cane is medically necessary or unnecessary (Tr. 328).   Additionally, Dr. Dervishi's opinion is not consistent with the ALJ's findings regarding the evidence as a whole (Tr. 24-25).   Thus, Dr. Dervishi's opinion is so patently deficient that the Commissioner could not possibly credit it as persuasive after considering the supportability and consistency factors.   20 C.F.R. § 416.920c(b)(2); s*ee also* Smith v. Saul, No. 18-1251-TMP, 2020 WL 259556, at *4 (W.D. Tenn. Jan. 17, 2020) (Physician's opinion is only patently deficient in "exceptional circumstances [where] the record is entirely inconsistent with a treating physician's opinion, or when a treating physician's opinion is accompanied by no explanation, or appears to be half-finished.").

The second requirement is not satisfied because the ALJ has not otherwise adopted the opinion of Dr. Dervishi (Tr. 25).   As for the third requirement, the Sixth Circuit has stated that it "is saved for the 'rare case' where the ALJ has met the 'goal' of § 404.1527, 'if not meeting its letter.'"   Thaxton v. Comm'r of Soc. Sec., 815 F. App'x 955, 960 (6th Cir. 2020) (quoting Nelson

---

7 As indicated above, Dr. Dervishi's examination revealed that Plaintiff walked without a cane, his gait was normal, he was able to get on and off the exam table without assistance, he had 5/5 bilateral lower extremity strength, and only mild limitation on his range of motion (Tr. 327-28).

v. Comm'r of Soc. Sec., 195 F. App'x 462, 472 (6th Cir. 2006)).    "The goal is to provide sufficient notice to a claimant and not offend a claimant's rights to due process."   Id.   This occurs where the ALJ provides good reasons for discounting the physician's opinion "in some other part of the decision but fails to explicitly state those reasons" when discussing the physician opinion itself.  See Smith v. Saul, No. 18-1251, 2020 WL 259556, at *4 (W.D. Tenn. Jan. 17, 2020) (citing Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010)).

The Court finds that the ALJ achieved the regulation's goal of providing notice to Plaintiff of the reasons why Dr. Dervishi's opinion was not persuasive.   The ALJ pointed out that Dr. Dervishi failed to express specific functional limitations (e.g., lifting/carrying, standing and/or walking, and sitting) imposed by Plaintiff's physical impairments (Tr. 25).   The ALJ explained that Dr. Dervishi instead provided a poorly phrased statement with a typographical error that made it unclear whether the doctor opined use of a cane was medically necessary or unnecessary (Id.) (citing Tr. 328).   Moreover, the ALJ's findings regarding the evidence pertaining to Plaintiff's physical conditions suggests how the ALJ would have considered the supportability and consistency factors in determining the persuasiveness of Dr. Dervishi's opinion (Tr. 24-25).  Thus, while not being a direct attack on the supportability and consistency of Dr. Dervishi's opinion as contemplated by the regulations, the ALJ's analysis is only one step removed from articulating why she believed Dr. Dervishi's opinion was not persuasive considering the supportability and consistency factors.   See Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 470-71 (6th Cir. 2006) (Holding that an administrative law judge met the goals of the regulations' procedural safeguards, despite not adhering to the letter of the law, where his decision as a whole was "an indirect attack" on the supportability and consistency of two physician opinions and the

16

decision made it clear that the opinions did not warrant controlling weight.).   Therefore, the Court finds that the first and third requirements are satisfied.

The Sixth Circuit has also indicated the failure to follow the Agency's procedural rule does not qualify as harmless error where the Court cannot engage in "meaningful review" of the ALJ's decision.   Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).   While the ALJ may have failed to follow 20 C.F.R. § 416.920c(b)(2), as evidence in the preceding paragraphs the omission has not impaired the Court's ability to engage in a "meaningful review" of the ALJ's decision.   For these reasons, the ALJ's failure to comply with § 416.920c(b)(2) is harmless error.

In sum, Plaintiff's challenge to the ALJ's RFC determination fails.   Therefore, Plaintiff is not entitled to relief on this claim.

Challenge to the Step Five Vocational Determination

1.  Arguments of the Parties

Plaintiff contends the vocational expert's testimony does not provide substantial evidence to support the ALJ's Finding Nos. 9 and 10 because the hypothetical question was inconsistent with the RFC determination (DN 17 PageID # 1531-33).   Plaintiff points out that the hypothetical question included the language, "And this person could adapt to occasional workplace changes that were gradually introduced" (Id. at PageID # 1532) (quoting Tr. 67).   Plaintiff contrasts this with the RFC's wording, "can adapt to situational change and recognize hazards in workplace given reasonable support" (Id.) (quoting Tr. 20).   Plaintiff maintains because the phrasing in the RFC is more restrictive than what was included in the hypothetical question, the vocational expert did not consider changes which might be more abrupt or might occur more frequently and the need to provide reasonable support when formulating her vocational opinion (Id. at PageID # 1532-33).

Plaintiff suggests the vocational expert might have responded with a narrower list of applicable jobs (Id. at PageID # 1533).

Defendant asserts that the vocational "expert expressly addressed the hypothetical situation that required introduction of changes gradually in the workplace—a more restrictive requirement with regard to how changes were handled in the [workplace]" (DN 23 PageID # 1561-62). "In other words, the hypothetical question posed to the vocational expert included specific *examples* of reasonable supports, such as only occasional workplace changes, and gradual introduction" (Id. at PageID # 1562). For this reason, Defendant contends the vocational expert's response provides substantial evidence to support the ALJ's vocational finding at step five (Id. at PageID # 1562-64) (citing Hoag v. Saul, No. 1:18-CV-02842, 2019 WL 7040607, at *13, 15 (N.D. Ohio, Sept. 27, 2019) (a hypothetical question more restrictive than the RFC can still serve as substantial evidence supporting the administrative law judge's decision). The ALJ's decision explains the substantial evidence supporting the findings (Id.).

2. Applicable Law

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 416.920(a)(4)(v) and (g), 416.966(a); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that

Grid Rule to meet this burden.    20 C.F.R. § 416.969; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon, 923 F.2d at 1181.    However, if a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert.    20 C.F.R. § 416.966(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).    For example, if the claimant suffers from an exertional and a non-exertional impairment then the Grids may be used only as a framework to provide guidance for decision making.    20 C.F.R. § 416.969a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Sec'y of Health & Human Servs., 820 F.2d 768, 771 (6th Cir. 1987); Kirk, 667 F.2d at 528-529.

3. Discussion

The pertinent part of the hypothetical question to the vocational expert reads, "[a]nd this person could adapt to *occasional* workplace changes that were *gradually* introduced" (Tr. 67) (emphasis added).    By contrast, the relevant part of the RFC determination states, "and can adapt to situational change and recognize hazards in workplace given *reasonable support*" (Tr. 20) (emphasis added).    Defendant suggests, and the Court agrees, that the hypothetical question provides examples of what the ALJ means by "*reasonable support*."    Specifically, the frequency (*occasional*) and rate (*gradual*) that the workplace changes are introduced.

The vocational expert's response to the hypothetical question identified three jobs with a total of several hundred thousand jobs in the national economy (Tr. 67).   Thus, the vocational expert's testimony provides substantial evidence to support the ALJ's finding—considering the Plaintiff's age, education, work experience, and RFC—that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 29).   Additionally, substantial evidence supports the ALJ's finding that Plaintiff has not been under a disability, as defined in the Social Security Act, since January 25, 2018, the date the application was filed, through August 7, 2019, the date the ALJ issued the decision (Id.).

In sum, Plaintiff's challenge to Finding Nos. 9 and 10 fail.   Therefore, Plaintiff is not entitled to relief on this claim.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

20

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

January 18, 2022

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel

21